IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

_____

CHARLES L. DYER,

                        Plaintiff,

      vs.                             Civil Action No.
                                       6:03-CV-0998 (LEK/DEP)

JO ANNE B. BARNHART, Commissioner
of Social Security,

                    Defendant.

_____

APPEARANCES:                   OF COUNSEL:

FOR PLAINTIFF:

OLINSKY & DIMARTINO          HOWARD D. OLINSKY, ESQ.
Historical First National Bank
186 West First Street
Oswego, NY 13126

FOR DEFENDANT:

HON. GLENN T. SUDDABY      WILLIAM H. PEASE, ESQ.
United States Attorney for the    Assistant U.S. Attorney
Northern District of New York
P.O. Box 7198
100 S. Clinton Street
Syracuse, NY 13261-7198

OFFICE OF GENERAL COUNSEL   BARBARA L. SPIVAK, ESQ.
Social Security Administration    Chief Counsel, Region II
26 Federal Plaza
New York, NY 10278             ARTHUR SWERDLOFF,  ESQ.
                                Assistant Regional Counsel

DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

## REPORT AND RECOMMENDATION

Plaintiff Charles Dyer, who suffers from heart disease as well as depression, has commenced this proceeding challenging a determination by the Commissioner that he was not disabled at the relevant times and, consequently, denying his application for disability insurance benefits.  In support of his appeal of that determination, plaintiff asserts that the administrative law judge ("ALJ") who heard and decided the matter did not give proper consideration to his mental condition which, he notes, includes a history of post-traumatic stress disorder ("PTSD").  Plaintiff further contends that the ALJ overlooked a recorded determination of disability by the Veteran's Administration, and that his use of the medical-vocational guidelines set forth in the applicable regulations, 20 C.F.R. Pt. 404, Subpt. P, App. 2 (the "grid") to determine the existence *vel non* of jobs which he is capable of performing was inappropriate in view of the nonexertional limitations presented by ongoing episodes of dizziness and depression.

Having reviewed the record carefully in light of plaintiff's arguments, I find that although the Commissioner's determination is supported by substantial evidence, it does not result from the application of proper legal

principles, since the ALJ failed to describe in his opinion his apparent

rejection of the Veterans' Administration's findings that the plaintiff was at

least partially disabled – a finding entitled to at least some weight in the

ALJ's determination.  Accordingly, I recommend that plaintiff's motion for

judgment on the pleadings be granted, and the case remanded for further

proceedings consistent with this opinion.

I.      BACKGROUND

Plaintiff was born on September 10, 1951; at the time of the hearing

in this matter, he was forty-eight years old.  Administrative Transcript at

pp. 32, 96.[1]  Plaintiff is married, and lives with his wife and their fifteen

year old son in a two story residence in Fulton, New York.  AT 32-33, 98.

Plaintiff withdrew from school in or about the ninth grade, but later

achieved a general equivalency diploma ("GED") in 1976.  AT 34-35, 353.

Plaintiff served in the United States Army from March of 1981 until

June, 1989, principally as a member of the Military Police.  AT 35, 108.

Dyer was honorably discharged from the military in 1989, following a heart

attack, and the reason given for his separation was "[p]hysical disability,

---

[1]      Portions of the administrative transcript, Dkt. No. 6, which was filed by
the Commissioner together with the agency's answer, will be cited in this decision as
"AT ___."

permanent[.]"  AT 108.  Upon leaving the service, plaintiff took a position

with the United States Postal Service, working as a mail carrier until

leaving that position in May of 1998 after suffering a second heart attack.

AT 35.  A later attempt by the plaintiff to return to work for the United

States Postal Service in a light duty position, following bypass surgery,

proved unsuccessful as a result of ongoing chest pain and dizziness.  AT

35-36, 48.

Plaintiff's physical symptoms of relevance stem from his history of

heart disease.  After suffering from an initial heart attack in 1991 plaintiff's

condition appears to have improved until on May 31, 1998, he

experienced a sudden onset of chest pressure and, after taking his wife's

Nitroglycerin tablets, without relief, proceeded to a local emergency room

for treatment.  AT 210-11.  Plaintiff was diagnosed as suffering from a

non-Q wave myocardial infarction, and following discharge from the

hospital was restricted from working for between four and six weeks.  AT

210.

After leaving the hospital plaintiff continued to experience

symptoms, resulting in a referral to Crouse Hospital, Syracuse, New York

for a cardiac catheterization.  AT 232.  Results from that procedure, which

was conducted on June 23, 1998, revealed severe posterior and posterolateral hypokinesis and mild anterolateral hypokinesis.   AT 233. In reviewing the results of the catheterization, Dr. Joseph Battaglia discerned evidence of significant three-vessel disease with "moderate LV dysfunction[,]" and recommended coronary artery revascularization surgery.  AT 234.   A coronary artery triple bypass grafting procedure was subsequently underwent by the plaintiff on July 27, 1998.  AT 239-40.

Since his bypass surgery, plaintiff has seen Dr. Anthony J. Navone for follow-up treatment.  AT 249.  On August 19, 1998, Dr. Navone noted plaintiff's continuing complaints of significant chest wall discomfort and numbness.  *Id.*  In an assessment completed on November 25, 1998 of plaintiff's functional capacity, Dr. Navone opined that Dyer is capable of lifting and carrying up to a maximum of twenty-five pounds; can push and/or pull up to fifty pounds; is able to stand and/or walk for up to two hours in an eight hour day; and can sit without limitation.  AT 304-12.  Dr. Navone's assessment does not indicate the existence of any other limitations stemming from plaintiff's heart condition.  *See id.*

In addition to his heart condition, plaintiff has been treated over time for depression.  In June of 1999, apparently precipitated by his heart

-5-

condition but later exacerbated by other stressors including marital
discord, plaintiff was evaluated psychiatrically at the Veteran's
Administration Hospital.  AT 351-52.  As a result of that examination Dyer
was assessed as suffering from exacerbation of his history of depression
and PTSD, and it was determined that the dosage for his prescription for
Zoloft – which he had been on during the prior three months – should be
increased, and he should additionally be placed on Trazodone.  *Id.*
Reports of subsequent examinations of Dyer at the Veteran's
Administration Hospital in late 1999, and extending into 2000, noted
ongoing symptoms of a major depressive disorder.  *See*, *e.g.*, AT 349,
397, 398, 400, 414, 416.  The record does not reflect any treatment over
that period, however, for PTSD, and treatment notes of an evaluation
conducted on June 28, 1999 reflect "[n]o symptoms of [obsessive
compulsive disorder] or PTSD."  AT 351.

In addition to being treated for his physical and mental condition,
including at the Veteran's Administration Hospital, plaintiff and/or his
medical records were consultatively examined on more than one
occasion.  On September 27, 1999, Kristen Barry, PhD., performed a
psychological evaluation, the results of which were largely unremarkable,

of the plaintiff.  AT 353-57.  While Dr. Barry did note that plaintiff's affect appeared to be somewhat depressed, with some symptoms of minor anxiety and fidgetiness, Dr. Barry found plaintiff to be oriented to person, place and time with a clear sensorium, and only mild impairment in his attention and concentration.  AT 355.  Dr. Barry concluded that plaintiff's insight and judgment were fair, and that he retained the ability to follow and understand simple directions and instructions.  AT 356.

Plaintiff's medical records were reviewed by Dr. Rodolfo Matundan, a state agency consultant, in order to assess Dyer's ability to perform work related mental activities.  AT 374-75.  Dr. Matundan, who completed both a psychiatric review technique form and a mental residual functional capacity assessment, found little impairment resulting from plaintiff's mental condition.  AT 365-75.  Dr. Matundan concluded, based upon Dyer's symptomology, that he suffered some, though not significant, limitation in his abilities to 1) understand and remember detailed instructions; 2) carry out detailed instructions; 3) maintain attention and concentration for extended periods; 4) work in coordination with or in proximity to others without distraction; 5) complete a normal workday and work week without interruption by psychological-based symptoms and to

perform at a consistent pace without unreasonable number and length of rest periods; 6) interact appropriately with the general public; 7) accept instructions and respond appropriately to criticism from supervisors; 8) get along with co-workers or peers without undue distraction; 9) appropriately respond to changes in the work setting; and 10) set realistic goals or make plans independently of others.  AT 374-75.  In other areas listed under the subheadings "understanding and memory", "sustained concentration and persistence", "social interaction" and "adaptation" Dr. Matundan found no evidence of any limitations.  *Id.*

During the hearing plaintiff testified with regard to his daily activities. According to his testimony, Dyer is able to drive, and occasionally visits with friends and attends his son's band concerts.  AT 34, 40-43.  Plaintiff enjoys camping in the family's trailer at Brennan's Beach, located on Lake Ontario, where he plays bingo and fishes.  AT 40-43.  Plaintiff also watches television and, as a hobby, works with his trains.  *Id.*

II.     PROCEDURAL HISTORY

A.     Proceedings Before The Agency

Plaintiff applied to the Social Security Administration on November 13, 1998 for disability insurance benefits, alleging a disability onset date of

May 31, 1998.  AT 96-98.  That application was denied, both initially and on reconsideration.  AT 53-54, 62-65, 67-69.

At plaintiff's request a hearing was scheduled to be held by ALJ John P. Chwalek, beginning on August 24, 1999, to address the denial of plaintiff's application for benefits.  AT 22-27.  At the initial hearing session, at which the ALJ was prepared to address plaintiff's heart condition, it was determined that recently-commenced treatment of the plaintiff for depression warranted consideration of that condition as well; the hearing was therefore concluded, and the matter was remanded to the agency for further review.  AT 26-27.

Following subsequent review of plaintiff's circumstances, the agency again determined that even when taking into consideration his mental condition, Dyer was not disabled.  AT 61, 83-85.  At plaintiff's renewed request, a hearing was conducted on December 23, 1999 by ALJ Chwalek.  AT 28-52.  Following that hearing, at which plaintiff was represented by counsel, ALJ Chwalek issued a decision on or about May 10, 2000 upholding the finding of no disability and corresponding denial of benefits.[2]  AT 13-20.  Applying the familiar, five step sequential evaluation

---

[2]     ALJ Chwalek's decision is undated; the notice of decision sent to the plaintiff together with the decision, however, is dated May 10, 2000.  *See* AT 10.

to the evidence presented, ALJ Chwalek first noted that plaintiff had not engaged in any substantial gainful activity during the relevant time period. AT 14.  ALJ Chwalek next determined that plaintiff did suffer from a severe physical impairment significantly limiting his ability to perform basic work activities, but rejected his mental condition as presenting an additional, severe impairment for step two purposes.[3]  AT 14-16.  ALJ Chwalek next found that plaintiff's physical impairment did not meet or equal any of the presumptively disabling conditions listed in the applicable regulations set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1.  AT 16.

Proceeding to step four of the controlling five step disability test, Dr. Chwalek surveyed the evidence before him and assessed plaintiff's residual functional capacity ("RFC").  Based upon the evidence considered, including notably an assessment performed by plaintiff's treating physician, Dr. Navone, ALJ Chwalek concluded that plaintiff is able to perform a full range of sedentary work.[4]  AT 16-17.  In arriving at

---

[3]     Although the ALJ's determination makes reference to his having completed, and attached to his decision, a Psychiatric Review Technique Form, that form is neither attached to his decision nor does it otherwise appear on the record.

[4]     Under the agency's regulations, sedentary work is defined as follows:

Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools.  Although a sedentary job is

that RFC finding ALJ Chwalek rejected plaintiff's claims of nonexertional

limitations resulting from dizziness, in light of his daily activities as well as

indications that at least as of February of 2000, those feelings of dizziness

had significantly subsided.  AT 17.  Also implicit in his determination is the

ALJ's rejection of plaintiff's depression as imposing any nonexertional

limitations on his ability to otherwise perform a full range of sedentary

work.

At step five of the sequential inquiry, ALJ Chwalek applied his RFC

finding and other relevant characteristics associated with plaintiff's

circumstances to the grid, which yielded a finding of no disability.  AT 18.

The ALJ's decision became a final determination of the agency when, on

June 17, 2003, the Social Security Administration Appeals Council denied

plaintiff's request for review.  AT 6-8.

B.   <u>This Action</u>

Plaintiff commenced this action on August 13, 2003.  Dkt. No. 1.

Issue was thereafter joined by the Commissioner's filing on November 6,

_____

defined as one which involves sitting, a certain amount of
walking and standing is often necessary in carrying out job
duties.  Jobs are sedentary if walking and standing are
required occasionally and other sedentary criteria are met.

20 C.F.R. § 404.1567(a).

2003 of an answer, accompanied by a transcript of the administrative

proceedings conducted by the agency.  Dkt. Nos. 5, 6.  With the filing of

plaintiff's brief, Dkt. No. 7, on December 19, 2003, and that on behalf of

the Commissioner, Dkt. No. 9, on February 25, 2004, the matter is now

ripe for determination and has been referred to me for the issuance of a

report and recommendation, pursuant to 28 U.S.C. § 636(b)(1)(B) and

Northern District of New York Local Rule 72.3(d).  *See also* Fed. R. Civ. P.

72(b).[5]

III.    DISCUSSION

        A.    Standard of Review

_____A court's review under 42 U.S.C. § 405(g) of a final decision by the

Commissioner is limited; that review requires a determination of whether

the correct legal standards were applied, and whether the decision is

supported by substantial evidence.  *Veino v. Barnhart*, 312 F.3d 578, 586

(2d Cir. 2002); *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000); *Schaal*

---

[5]        This matter has been treated in accordance with the procedures set forth in General Order No. 18 (formerly, General Order No. 43) which was issued by the Hon. Ralph W. Smith, Jr., then-Chief United States Magistrate Judge, on January 28, 1998, and amended and reissued by then-Chief District Judge Frederick J. Scullin, Jr., on September 19, 2001.  Under that General Order an action such as this is considered procedurally, once issue has been joined, as if cross-motions for judgment on the pleadings had been filed pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

*v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998); *Martone v. Apfel*, 70 F.

Supp.2d 145, 148 (N.D.N.Y. 1999) (Hurd, J.) (citing *Johnson v. Bowen*,

817 F.2d 983, 985 (2d Cir. 1987)).  Where there is reasonable doubt as to

whether the Commissioner applied the proper legal standards, her

decision should not be affirmed even though the ultimate conclusion

reached is arguably supported by substantial evidence.  *Martone*, 70 F.

Supp.2d at 148.  If, however, the correct legal standards have been

applied and the ALJ's findings are supported by substantial evidence,

those findings are conclusive, and the decision should withstand judicial

scrutiny regardless of whether the reviewing court might have reached a

contrary result if acting as the trier of fact.  *Veino*, 312 F.3d at 586;

*Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988); *Barnett v. Apfel*, 13

F. Supp.2d 312, 314 (N.D.N.Y. 1998) (Hurd, M.J.); *see also* 42 U.S.C. §

405(g).

The term "substantial evidence" has been defined as "'such relevant

evidence as a reasonable mind might accept as adequate to support a

conclusion.'"  *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420,

1427 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197,

229, 59 S. Ct. 206, 217 (1938)).  To be substantial, there must be "'more

than a mere scintilla'" of evidence scattered throughout the administrative record.  *Id.*; *Martone*, 70 F. Supp.2d at 148 (citing *Richardson*).  "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams*, 859 F.2d at 258 (citing *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488, 715 S. Ct. 456, 464 (1951)).

When a reviewing court concludes that incorrect legal standards have been applied, and/or that substantial evidence does not support the agency's determination, the agency's decision should be reversed.  42 U.S.C. § 405(g); *see Martone*, 70 F. Supp.2d at 148.  In such a case the court may remand the matter to the Commissioner under sentence four of 42 U.S.C. § 405(g), particularly if deemed necessary to allow the ALJ to develop a full and fair record or to explain his or her reasoning.  *Martone*, 70 F. Supp.2d at 148 (citing *Parker v. Harris*, 626 F.2d 225, 235 (2d Cir. 1980)).  A remand pursuant to sentence six of section 405(g) is warranted if new, non-cumulative evidence proffered to the district court should be considered at the agency level.  *See Lisa v. Secretary of Dep't of Health &*

*Human Servs. of U.S.*, 940 F.2d 40, 43 (2d Cir. 1991).  Reversal without

remand, while unusual, is appropriate when there is "persuasive proof of

disability" in the record and it would serve no useful purpose to remand

the matter for further proceedings before the agency.  *Parker*, 626 F.2d at

235; *Simmons v. United States R.R. Retirement Bd.*, 982 F.2d 49, 57 (2d

Cir. 1992); *Carroll v. Secretary of Health & Human Servs.*, 705 F.2d 638,

644 (2d Cir. 1983).

    B.    <u>Disability Determination: The Five Step Evaluation Process</u>

The Social Security Act defines "disability" to include the "inability to

engage in any substantial gainful activity by reason of any medically

determinable physical or mental impairment which can be expected to

result in death or which has lasted or can be expected to last for a

continuous period of not less than 12 months[.] "  42 U.S.C. §

423(d)(1)(A).  In addition, the Act requires that a claimant's

> physical or mental impairment or impairments
> [must be] of such severity that he is not only
> unable to do his previous work but cannot,
> considering his age, education, and work
> experience, engage in any other kind of substantial
> gainful work which exists in the national economy,
> regardless of whether such work exists in the
> immediate area in which he lives, or whether a
> specific job vacancy exists for him, or whether he
> would be hired if he applied for work.

*Id.* § 423(d)(2)(A).

The agency has prescribed a five step evaluative process to be employed in determining whether an individual is disabled.  *See* 20 C.F.R. §§ 404.1520, 416.920.  The first step requires a determination of whether the claimant is engaging in substantial gainful activity; if so, then the claimant is not disabled, and the inquiry need proceed no further.  *Id.* §§ 404.1520(b), 416.920(b).  If the claimant is not gainfully employed, then the second step involves an examination of whether the claimant has a severe impairment or combination of impairments which significantly restricts his or her physical or mental ability to perform basic work activities.  *Id.* §§ 404.1520(c), 416.920(c).  If the claimant is found to suffer from such an impairment, the agency must next determine whether it meets or equals an impairment listed in Appendix 1 of the regulations.  *Id.* §§ 404.1520(d), 416.920(d); *see also id.* Part 404, Subpt. P, App. 1.  If so, then the claimant is "presumptively disabled".  *Martone*, 70 F. Supp.2d at 149 (citing *Ferraris v. Heckler*, 728 F.2d 582, 584 (2d Cir. 1984)); 20 C.F.R. §§ 404.1520(d), 416.920(d).

If the claimant is not presumptively disabled, step four requires an assessment of whether the claimant's residual functional capacity ("RFC")

precludes the performance of his or her past relevant work.  20 C.F.R. §§
404.1520(e), 416.920(e).  If it is determined that it does, then as a final
matter the agency must examine whether the claimant can do any other
work.  *Id.* §§ 404.1520(f), 416.920(f).

The burden of showing that the claimant cannot perform past work
lies with the claimant.  *Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996);
*Ferraris*, 728 F.2d at 584.  Once that burden has been met, however, it
becomes incumbent upon the agency to prove that the claimant is capable
of performing other work.  *Perez*, 77 F.3d at 46.  In deciding whether that
burden has been met, the ALJ should consider the claimant's RFC, age,
education, past work experience, and transferability of skills.  *Ferraris*, 728
F.2d at 585; *Martone*, 70 F. Supp.2d at 150.

C.    The Evidence in this Case

In support of his challenge of the ALJ's determination, plaintiff raises
several arguments.  The strongest of those arguments is plaintiff's
contention that when determining plaintiff's RFC and, correspondingly, the
availability of jobs in the national economy which he is able to perform, the
ALJ improperly discounted or failed to consider his persistent chest pain
and dizziness symptomology, as well as his depression.

-17-

1.    Step Two Determination

Pointing to his diagnosed major depressive disorder and PTSD, which has been treated over time through the use of therapy and medication, including Zoloft, Wellbutrin, and Trezidone, as well as a global assessment of functioning ("GAF") score of fifty assigned by a VA doctor in July and August of 1999, plaintiff finds fault with the ALJ's determination at step two that his mental condition is not severe.[6]

For purposes of step two, an impairment is not severe if it does not significantly limit a claimant's ability to perform basic work activities.  20 C.F.R. § 404.1521(a); *Bowen v. Yuckert*, 482 U.S. 137, 146, 107 S. Ct. 2287, 2293-94 (1987).  By regulation, basic work activities entail "the abilities and aptitudes necessary to do most jobs" and can include

(1)    Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling;

(2)    Capacities for seeing, hearing, and speaking;

(3)    Understanding, carrying out and

---

[6]    The Global Assessment of Functioning ("GAF") scale considers psychological, social, and occupational functioning on a hypothetical continuum of mental health.  Diagnostic and Statistical Manual of Mental Disorders 34 (American Psychiatric Association, 4th Ed. Text Revision 2000) ("DSM-IV-TR").  A GAF score of 50 indicates the existence of serious mental health symptoms or serious impairment in social, occupational or school functioning.  *Id.*

remembering simple instructions;

(4)    Use of judgment;

(5)    Responding appropriately to supervision, co-
        workers and usual work situations; and

(6)    Dealing with changes in a routine work
        setting.

20 C.F.R. § 404.1521(b).

Against this backdrop, the assessment of Dr. Matundan provides

substantial evidence supporting the ALJ's conclusion that plaintiff's mental

condition was not sufficiently severe to meet this threshold.  *See* AT 374-

76.  As was previously noted, in his evaluation of plaintiff's mental

condition, using the prescribed form, Dr. Matundan found only modest

limitation in certain of the listed categories, with no discernable evidence

of limitation in the others.  AT 374-76.  The ALJ's determination on the

severity of plaintiff's mental condition is also supported by the report of Dr.

Kristen Barry who concluded, based upon her consultative psychiatric

examination, that Dyer is able to follow and understand simple directions

and instructions, and retains fair insight and judgment.  AT 356.  As state

consultants, those opinions of Dr. Matundan and Dr. Berry are entitled to

weight, and can provide substantial evidence supporting a determination

in this regard.  20 C.F.R. § 404.1527(f); SSR 96-6p; *see also*, *e.g.*, *Brunson v. Barnhart*, No. 01-CV-1829, 2002 WL 393078, at *13-*15 (E.D.N.Y. Nov. 14, 2002).

In support of this portion of his challenge plaintiff relies heavily upon Social Security Ruling ("SSR") 86-8, which addresses a step two determination when multiple impairments are presented.  That guideline provides that "[w]hen multiple [non-severe] impairments, considered in combination, would have more than a minimal effect on the ability to perform basic work activities, adjudication must continue through the sequential evaluation process."  SSR 86-8.  In this instance, based upon his finding that plaintiff's heart condition represented a severe impairment for step two purposes, the ALJ in fact proceeded through the sequential evaluation; thus any error in weighing plaintiff's mental condition at step two of the sequential test is of little if any significance.  As will be seen, the question of far greater concern is whether plaintiff suffers from a mental condition which precludes him from performing a full range of sedentary work.[7]

As was earlier noted, in his challenge plaintiff also relies heavily

---

[7]     *See* pp. 27-29, *post.*

upon the GAF score assigned to him by one of his treating physicians in

July and August.  While it is true that a GAF of fifty can reflect the

existence of serious mental health symptoms or serious impairment in

social, occupational or school functioning, *see* DSM-IV-TR 34, plaintiff's

argument fails to take into account that his GAF was determined to have

improved to fifty-five as of November, 1999.  AT 416.   Such a GAF score

indicates the presence of only moderate symptoms or moderate difficulty

in social, occupational, or school functioning.  DSM-IV-TR 34.  Moreover,

a GAF score, while plainly relevant, is not directly correlative to the

severity of an underlying impairment.

In sum, the record contains substantial evidence supporting the

finding that plaintiff's mental condition was not severe, for purposes of

step two of the ALJ's analysis.

### 2.    The ALJ's Sedentary Work Finding

Pivotal to the ALJ's finding of no disability was his RFC finding that

the plaintiff retains the ability to perform a full range of sedentary work.

Plaintiff assails that determination as inconsistent with a determination by

the Veteran's Administration that he is disabled.

A claimant's RFC represents a finding of the range of tasks he or

she is capable of performing notwithstanding the impairments at issue.  20

C.F.R. § 404.1545(a).  An RFC determination is informed by consideration

of a claimant's physical abilities, mental abilities, symptomology, including

pain, and other limitations which could interfere with work activities on a

regular and continuing basis.  *Id.*; *Martone*, 70 F.Supp.2d at 150.

To properly ascertain a claimant's RFC, an ALJ must therefore

assess plaintiff's exertional capabilities, addressing his or her ability to sit,

stand, walk, lift, carry, push and pull.  20 C.F.R. § 404.1569a.

Nonexertional limitations or impairments, including impairments which

result in postural and manipulative limitations, must also be considered.

20 C.F.R. § 404.1569a; *see also* 20 C.F.R. Part 404, Subpt. P, App. 2 §

200.00(e).  When making an RFC determination, an ALJ must specify

those functions which the claimant is capable of performing; conclusory

statements concerning his or her capabilities, however, will not suffice.

*Martone*, 70 F.Supp.2d at 150 (citing *Ferraris,* 728 F.2d at 587).  An

administrative RFC finding can withstand judicial scrutiny only if there is

substantial evidence in the record to support each requirement listed in

the regulations.  *Martone*, 70 F.Supp.2d at 150 (citing *LaPorta v. Bowen*,

737 F. Supp. 180, 183 (N.D.N.Y. 1990)); *Sobolewski v. Apfel*, 985 F.Supp.

300, 309-10 (E.D.N.Y. 1997).

The exertional attributes of the ALJ's sedentary work RFC finding in this case are well supported.  In his functional capacity assessment, rendered in November of 1998 – only five months after plaintiff's bypass surgery – Dyer's treating physician, Dr. Navone, concluded in essence that plaintiff has the capacity to perform a full range of sedentary work, without significant limitation.  AT 311-12.  That assessment by one of plaintiff's treating physicians is not directly contradicted by any medical evidence in the record.[8]

In this portion of his challenge plaintiff places heavy reliance upon the finding by the Veteran's Administration regarding disability.  Prior to May of 1998, including during the time that he worked for the United States Postal Service, plaintiff was rated as sixty percent disabled.  AT 111.  It is true, as plaintiff argues, that he was assessed as fully disabled from May 31, 1998, obviously as a result of his heart condition.  *Id.* Following recovery from his triple bypass surgery in July of 1998, however, plaintiff was returned to a sixty percent disability level, effective

---

[8]      Dr. Navone's assessment is buttressed by a substantially consistent functional capacity assessment performed by a state consultant, In T. Seok, M.D., in October of 1999.  *See* AT 358-64.

on November 1, 1998.  *Id.*; *see also* AT 117-18.

Another agency's determination regarding disability, even that of a
sister federal agency, is not binding upon the Social Security
Administration since the question of disability as relates to various
applications is typically subject to differing criteria.  *See* 20 C.F.R. §
404.1504.  Although plaintiff does not argue otherwise, he nonetheless
maintains that the VA's determination is entitled to some weight citing,
*inter alia*, *Hankerson v. Harris*, 636 F.2d 893 (2d Cir. 1980) and *Chambliss
v. Massanari*, 269 F.3d 520 (5th Cir. 2001).

Although the circuit courts disagree as to the degree of deference
due to VA findings, *see McCartey v. Massanari*, 298 F.3d 1072, 1076 (9th
Cir. 2002) (listing cases and varying approaches – i.e., "substantial"
weight, "great" weight, "some" weight), as plaintiff points out no circuit has
held that an ALJ is free to disregard a VA finding of disability entirely.  *Id.*
at 1075-76.  Unquestionably, as the Fifth Circuit observed in *Chambliss*,
while

> [a] VA rating of total and permanent disability is not
> legally binding on the Commissioner because the
> criteria applied by the two agencies is different, . . .
> it is evidence that is entitled to a certain amount of
> weight and must be considered by the ALJ.

-24-

*Chambliss*, 269 F.3d at 522 (citations omitted)[9].  The Second Circuit has

held that VA ratings are entitled to "some weight."  *Hankerson*, 636 F.2d

at 897; *see also Spicer v. Califano*, 461 F.Supp. 40, 46 n.4 (N.D.N.Y.

1978) (Munson, J.) (VA finding entitled to "some consideration").

    Although the ALJ referenced VA records in his decision, he did not

directly address the plaintiff's VA disability rating in his decision.  While

the Commissioner argues that the evidence in the record which was

considered by the ALJ makes prominent reference to the VA disability

finding, and it is clear that the ALJ in fact questioned plaintiff at the

hearing regarding whether he was receiving a VA pension, *see* AT 51, the

ALJ committed reversible error by failing to mention the VA rating and affix

weight he has accorded that rating in reaching hi decision.[10]  *See Morrison

v. Apfel*, 146 F.3d 625, 628 (8th Cir. 1998) (dismissing Commissioner's

suggestion that ALJ's failure to address the VA findings was "implicit

rejection" when thirty pages of the record referred to finding and

---

[9]     The court in *Chambliss* went on to note, however, that "the relative
weight to be given this type of evidence will vary depending upon the factual
circumstances of each case."  *Chambliss*, 269 F.3d at 522.


[10]    The fact that one of the VA disability findings was less than one hundred
percent does not alter this result.  *McCartey*, 298 F.3d at 1076; *Baca v. Dept. of Health
& Human Servs.*, 5 F.3d 476, 480 (10th Cir. 1993); *Hankerson*, 636 F.2d at 896-97.

remanding for ALJ to explicitly address finding); *Grogan v. Barnhart*, 399 F.3d 1257, 1262-63 (10th Cir. 1995); *Gann v. Barnhart*, No. Civ.A. 03-2571, 2004 WL 2282910, at *3 (D. Kan. June 24, 2004) (remanding where ALJ failed to make even passing reference to VA benefits in decision); *Dreiling v. Massanari*, No. 99-4178, 2001 WL 1155270, at *5-*6 (D. Kan. Sept. 28, 2001) (remanding where ALJ cited disability rating in opinion but failed to discuss whether rating was considered in his decision and whether it was accorded proper weight); *Richter v. Chater*, 900 F.Supp. 1531, 1538-39 (D. Kan. 1995) (in a case involving only passing reference to VA pension as source of income insufficient, remanding for Commissioner to obtain VA records and address finding); *see also McCartey*, 298 F.3d at 1076-77 (remanding for payment of benefits when VA rating not mentioned in opinion and substantial evidence, including VA findings, supported directed finding of disability).  "[A] district court may not create post-hoc rationalizations to explain the Commissioner's treatment of evidence when that treatment is not apparent from the Commissioner's decision itself."  *Grogan*, 399 F.3d at 1263.

Based on the ALJ's failure to explain whether he considered the VA's disability ratings of sixty and one hundred percent, and if so, the

basis for his rejection of those findings, I recommend that the case be remanded to the ALJ for further consideration.

   3. <u>Use of the Grid</u>

  In his appeal, plaintiff also challenges the ALJ's reliance, at step five of the relevant inquiry, upon the grid to support his finding of no disability.

  Ordinarily, the Commissioner can meet her burden in connection with the fifth step of the relevant disability test by utilizing the grid. *Rosa v. Callahan*, 168 F.3d 72, 78 (2d Cir. 1999); *Bapp v. Bowen*, 802 F.2d 601, 604 (2d Cir. 1986). The grid takes into consideration a claimant's RFC, as well as his or her age, education and work experience, in order to determine whether he or she can engage in substantial gainful work in the national economy. *Id.* Whether or not the grid should be applied in order to make a step five determination presents a case-specific inquiry which depends on the particular circumstances involved. *Bapp*, 802 F.2d at 605. If a plaintiff's situation fits well within a particular classification, then resort to the grid is appropriate. *Id.* If, on the other hand, nonexertional impairments, including pain, <u>significantly</u> limit the range of work permitted by exertional limitations, then use of the grid is inappropriate, in which

case further evidence and/or testimony is required.[11]  *Rosa*, 168 F.3d at 78; *Bapp*, 802 F.2d at 605-06.

Unquestionably, when presented with indications that plaintiff has nonexertional limitations, such as those associated with a mental impairment, the ALJ must determine whether the resulting limitations would significantly diminish the full range of work which the plaintiff could otherwise perform within the designated category, in this case sedentary work.  *Samuels v. Barnhart*, No. 01 Civ. 3661, 2003 WL 21108321, at *12-*13 (S.D.N.Y. May 14, 2003).  For reasons previously noted, the findings of both Drs. Matundan and Barry fail to evidence any such limitations on plaintiff's ability to perform a full range of sedentary work.

Plaintiff also points to his chest pains and dizziness as sources of additional, nonexertional limitations undermining the finding of his ability to perform a full range of sedentary work.  While it is true that plaintiff continued to complain of dizziness after his surgery, he failed to undergo

---

[11]     As one court has explained,

> [a] nonexertional limitation is one imposed by the claimant's impairments that affect [his or] her ability to meet the requirements of jobs other than strength demands, and includes manipulative impairments and pain.

*Sobolewski v. Apfel*, 985 F. Supp. 300, 310 (E.D.N.Y. 1997) (citing 20 C.F.R. § 404.1569(a), (c)).

a carotid doppler assessment ordered on several occasions to assess that condition.  *See*, *e.g.*, AT 392, 407, 410, 418.  Moreover, in January of 2000, plaintiff related that the "dizziness he had experienced around his last session had disappeared."  AT 415.  One month later, plaintiff reported that "episodes of dizziness that were very prominent in the fall have resolved to once or twice a week."  AT 417.  Under these circumstances the ALJ properly concluded that plaintiff's dizziness did not constitute a nonexertional limitation significantly limiting his ability to perform a full range of sedentary work.  *E.g.*, *Crawford v. Bowen*, 687 F.Supp. 99, 105 (S.D.N.Y. 1988).  As such, the ALJ's reliance on the grid for purposes of making his step five determination was proper.

      D.      Failure of Appeals Council to Consider Plaintiff's Brief

On February 14, 2003, the Appeals Council granted plaintiff's attorney permission to submit, within thirty days, a brief addressing the issues sought to be raised on appeal.  Such a brief was apparently sent by plaintiff's attorney to the Appeals Council by telefax transmission on March 17, 2003.  There is no indication that that brief was accompanied by any new evidence not previously included within the record.  Plaintiff maintains that the failure of the Appeals Council to make reference to that

-29-

brief and to include it in the record deprived him of meaningful review, and provides a basis for remanding the matter to the agency.

As the Commissioner correctly notes, despite the ambiguity which may exist as to whether the Appeals Council did in fact consider the brief proffered to that body by the plaintiff, this argument provides no basis for reversal of the ALJ's determination.  This court's jurisdiction in this action is limited; under 42 U.S.C. § 405(g), through which that jurisdiction is conferred, the court may only review a final decision of the Commissioner. Based upon the Appeals Council's denial of plaintiff's request for a review, the ALJ's determination became the final, reviewable decision of the agency.  20 C.F.R. § 404.981; *see Perez*, 77 F.3d at 44 (citing, *inter alia*, 20 C.F.R. § 404.981).  While it is true that under *Perez* and other applicable case law the inclusion of new and material <u>evidence</u> submitted to the Appeals Council is required, in this instance plaintiff does not allege the submission of any such evidentiary material, and thus the Appeals Council's failure – assuming *arguendo* such a failure occurred – to consider the legal arguments in plaintiff's brief and to include that brief in the Administrative Record is meaningless, and does not serve to invalidate the final, adverse determination rendered by the agency.

-30-

IV.   <u>SUMMARY AND RECOMMENDATION</u>

In his determination the ALJ found that plaintiff retains the RFC to perform a full range of sedentary work.  That finding is supported by substantial evidence in the record, including the opinions of plaintiff's own treating physician.  The ALJ's resort to the grid, utilizing this RFC determination, was entirely appropriate, since substantial evidence in the record supports the ALJ's finding that neither plaintiff's claims of dizziness nor his depression significantly limited to his ability to perform a full range of work within the sedentary work category.

The ALJ failed, however, to include analysis of the VA's determination that plaintiff was at least partially if not completely disabled at some of the relative times in his opinion, and to explain what weight he accorded that determination, thus preventing the court from engaging in meaningful review the ALJ's implicit rejection of those findings.

Based upon the foregoing it is hereby

RECOMMENDED that plaintiff's motion for judgment on the pleadings be GRANTED, the Commissioner's determination VACATED, and the case REMANDED for further proceedings consistent with this opinion.

NOTICE: Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court within ten (10) days.  FAILURE TO SO OBJECT TO THIS REPORT WILL PRECLUDE APPELLATE REVIEW. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72; *Roland v. Racette*, 984 F.2d 85 (2d Cir. 1993).

IT IS FURTHER ORDERED, that the Clerk of the Court serve a copy of this Report and Recommendation upon the parties by regular mail.

Dated:     August 11, 2006
           Syracuse, NY

G:\socialsecurity\dyer.wpd

David E. Peebles
U.S. Magistrate Judge

-32-